UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE ESTATE OF JOLENE LOVELETT,<br><br>                Plaintiff,<br>   v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                Defendants. | CASE NO. C16-5922 BHS<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, REQUESTING RESPONSE, AND RESETTING DISPOSITIVE MOTIONS DEADLINE |

      This matter comes before the Court on the joint motion for summary judgment of Defendants Abbott Adult Family Homes, LLC ("AAFH"); Kristy Danforth ("Danforth"), RN; Nancy Dufraine ("Dufraine"); Florence Fadele, ARNP ("Fadele"); Heather Hoyle ("Hoyle"); Kelsie Moen, RN ("Moen"); Bhakta Rizal; Renna Rizal; Sandra Sanders ("Sanders"); Trisha Shipp, LPN ("Shipp"); State of Washington ("State"); and the Confederated Tribes of The Chehalis Reservation's ("Tribe") (collectively "Defendants") (Dkt. 93). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part for the reasons stated herein.

## I. PROCEDURAL HISTORY

On November 1, 2016, the Estate of Jolene Lovelett ("the Estate") filed a complaint against Defendants and the United States of America asserting claims for violations of 42 U.S.C. § 1983; violations of Washington's Abuse of Vulnerable Adults Act, RCW Chapter 74.34; and the "common law torts under Washington law, including assault, battery, negligence, neglect, abandonment, outrage and infliction of emotional distress." Dkt. 1.

On May 1, 2017, the Court granted the United States' motion to dismiss. Dkt. 54.

On March 15, 2018, Defendants filed a joint motion for summary judgment. Dkt. 93. On April 2, 2018, the Estate responded. Dkt. 114. On April 6, 2018, Defendants replied and moved to strike certain evidence the Estate submitted in support of its position. Dkt. 122. On April 11, 2018, the Estate filed a surreply requesting that the Court strike evidence submitted by Defendants. Dkt. 143.[1]

On March 22, 2018, the Estate filed a motion for partial summary judgment. Dkt. 106. On April 9, 2018, all defendants responded. Dkts. 128, 133, 134, 135, 139. On April 13, 2018, the Estate replied. Dkt. 144.

On May 14, 2018, the Court granted the parties' motion to dismiss the Tribe. Dkt. 152.

---

[1] The Court declines to engage in an item-by-item assessment of the parties' motions to strike. Instead, the Court will specifically cite the evidence it relies upon in considering the motions.

## II. FACTUAL BACKGROUND

The facts relevant to Defendants' motion are mostly undisputed. Lovelett was born with severe physical and developmental disabilities and essentially dependent upon caregivers for all aspects of her life. Lovelett was a member of the Tribe, and on February 28, 2006, the Chehalis Tribal Court appointed Arnold Cooper ("Cooper") as a limited guardian of Lovelett "to make informed decisions regarding all medical, residential and other daily living decisions necessary." Dkt. 99 at 5.

At the beginning of 2013, Lovelett qualified for Medicaid assistance administered through the Washington Department of Social Health Services ("DSHS"). Dkt. 98, ¶ 6. At that time, Jessica Ward was Lovelett's DSHS case manager. *Id*. Although the timing is unclear, it appears that Lovelett was hospitalized or in a hospital in early March 2013. Around that time Sanders, a case resource manager with the Developmental Disabilities Administration division of DSHS, replaced Ms. Ward. *Id*. It also seems that Chehalis Tribal Adult Services case manager Hoyle was involved in some capacity with Lovelett's care. Sometime before March 20, 2013, the Tribe requested a review hearing of Lovelett's case pursuant to its vulnerable adult code. Dkt. 99 at 12. On March 20, 2013, the tribal court entered an order appointing Chehalis Tribal Adult Services to act in Lovelett's best interest, make all necessary decisions regarding Lovelett's "health, safety, and welfare," and assist her in "obtaining all necessary services for her well-being." *Id.* at 13. Pursuant to the order, Hoyle, an adult services social worker employed by the Tribe, became Lovelett's guardian, in addition to Cooper.

In early April 2013, Lovelett was transferred to AAFH, which was owned by Bhakta Rizal. Dkt. 95, ¶ 2. On April 3, 2013, Hoyle signed AAFH's admission agreement for Medicaid-eligible residents. Dkt. 94 at 9–31. AAFH, through its employees Mr. Rizal and his wife Renna (the "Rizals"), provided Lovelett with "room, board, laundry and necessary supervision and assistance with daily living activities." Dkt. 95, ¶ 2. Nurse Delegator Danforth also monitored and cared for Lovelett. *Id*. ¶ 3. Danforth declares that she was an independent contractor for, and not an employee of, the State when she provided services to Lovelett. Dkt. 100, ¶ 6.

Also in early April, Sanders discovered that Lovelett no longer qualified for Medicaid. Dkt. 98, ¶ 7. As a member of the Tribe, Lovelett received a monthly disbursement, which resulted in her financial assets exceeding the $2,000 Medicaid qualification limit. *Id*. DSHS concluded that Medicaid funding would stop in late June 2013. *Id*. ¶ 8. Sanders, however, kept Lovelett's file open in case Lovelett spent down her assets below the $2,000 limit. *Id*.

When the State ended Medicaid payments, Hoyle managed the contracts and payments on behalf of Chehalis Tribal Adult Services for Lovelett's care. She hired Danforth as an independent contractor to oversee care. Dkt. 100, ¶ 7. Hoyle also contracted with nurse practitioner Fadele and assigned tribal employees nurse Shipp and nurse Moen to provide medical services and treatments for Lovelett under the direction of Fadele.

On October 1, 2013, Lovelett was unresponsive at AAFH. Mr. Rizal called 911, and Lovelett was transported to the hospital. Lovelett arrived at the hospital in extremely

poor health. She had multiple ulcers and bed sores, was in poor nutritional health, and had a severe internal infection. Lovelett remained in the hospital until she passed away on November 4, 2013.

Regarding the final defendant Dufraine, she was the Tribe's Social Services Director. On October 2, 2013, the day after Lovelett was admitted to the hospital, she made a report to Washington Adult Protective Services that Lovelett may have been neglected and stated that she would be contacting the Sheriff's Department as well as Tribal authorities. Dkt. 116.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.      § 1983**

Defendants move for judgment on the Estate's § 1983 claims arguing that all Defendants except Sanders did not act under color of law, Sanders did not deprive Lovelett of a constitutional right, and the claims are time-barred. Dkt. 93.

**1.      Acting Under Color of Law**

"To establish a § 1983 claim, a plaintiff must show that an individual acting under the color of state law deprived him of a right, privilege, or immunity protected by the United States Constitution or federal law." *Levine v. City of Alameda*, 525 F.3d 903, 905

(9th Cir. 2008). "An individual acts under color of state law when he or she exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (quotation omitted). As a general rule, it is presumed that actions by private parties are not taken under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not state action.").

The Ninth Circuit has "recognize[d] at least four different criteria, or tests, used to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quotation omitted).

In this case, Sanders is the only defendant that is a direct employee of the State. As such, the Estate must establish that the other defendants were somehow acting under color of law. The Estate fails to do so. First, the Estate fails to clarify which test establishes state action. Instead, it relies on numerous cases addressing medical services rendered to inmates or individuals in custody. *See* Dkt. 114 at 12–19. Lovelett, however, was not in state custody; she only qualified for Medicaid assistance from the State. When Lovelett qualified, DSHS assigned case manager Sanders with duties as follows:

> 1. Determine program eligibility, complete assessments identifying your preferences, strengths and needs and reassess annually or as needs change;
> 2. Assist you to develop an Individual Support Plan that documents your choice of services and qualified providers;
> 3. Authorize payment for services identified in your Individual Support Plan; and,

> 4. Monitor that services are provided according to your Individual Support Plan.

Dkt. 116-4 at 7. Sanders worked with Lovelett's guardian Hoyle to establish the support plan and contract with independent private providers AAFH and Dansforth. *Id*. at 7–8. The Estate fails to establish that these acts constitute either joint action or a nexus with the private medical and assisted living providers. Similar to a previous case addressing Medicaid patients in a nursing home, the medical decision forming the basis of the Estate's claims were made by independent medical providers and was not state action. *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) ("The decisions about which respondents complain are made by physicians and nursing home administrators, all of whom are concededly private parties."). Therefore, the Estate's arguments as to joint action or governmental nexus fail.

Second, the Estate ventures even further afield to assert that the medical providers hired by Hoyle while Lovelett was not qualified for Medicaid, July 2013 through September 2013, were acting under color of law. The Estate fails to present any rational basis for such a position. Instead, it argues that Hoyle and all the people she hired acted under color of law because Hoyle had previously worked with Sanders and Sanders had kept Lovelett's Medicaid file open. Dkt. Dkt. 114 at 16–18. There is no authority for such a proposition and no test for state action encompasses such a broad extension of the law. Therefore, the Estate's arguments on this issue fail.

Third, the Estate argues that AAFF and the medical providers were licensed by the state, which makes them state actors. Dkt. 114 at 17. This argument, however, has been

explicitly rejected. *Blum*, 457 U.S. at 1010–11. The rationale is that a nurse who requires a state license to practice nursing is not a state actor based on the fact that the state issues the license and regulates the nurse's conduct.

Last, the Estate argues that "it has long been the reality that Medicaid and other State services to vulnerable, disabled persons is definitively a governmental function." Dkt. 114 at 18. Notably, the Estate fails to cite any authority for the proposition that this "government function" translates to state action for any person providing services to a Medicaid recipient. The Court can agree with the Estate that the government has been administering Medicaid since the program's inception. However, just because the government administers a service and pays providers for care, does not mean that every provider paid by Medicaid engages in state action. The Estate must identify some state action, and it has failed to do so by arguing that simply being a medical provider paid by Medicaid becomes a state actor for purposes of § 1983. For such a long standing and widely used program, it would seem that numerous authorities would exist if the Estate's position was correct. Instead, there is a dearth of cases addressing the issue, and the Court declines to extend laws regarding inmate health care to the Medicaid realm. Therefore, the Court grants Defendants' motion on the issue that every Defendant except Sanders did not act under color of law. The § 1983 claims against these Defendants are dismissed.[2]

---

[2] The Estate concedes that it may not assert a § 1983 claim against the State itself. Dkt. 114 at 21 n.18. Thus, to the extent the complaint asserts such a claim, it is dismissed. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

### 2. Constitutional Violation

Sanders argues that the Estate fails to state a Fourteenth Amendment violation against her. Dkt. 93 at 16–19. The Estate counters that, "[a]s a ward of the State and the Tribe involuntarily confined to [her] choice of treatment and placement, Ms. Lovelett had a constitutional right to receive adequate medical care." Dkt. 114 at 19. This argument fails from the outset. Lovelett was not a ward of the State; it was the Tribal court that appointed Cooper and Hoyle as guardians for Lovelett. Sanders worked with those guardians who essentially stepped into the shoes of the Medicare recipient Lovelett. There is no rational basis to extend the law regarding confined persons, such as inmates, involuntarily committed, or immigrants, to Medicaid recipients that have been appointed a guardian by a tribal court. Therefore, the Court grants Sanders's motion on this issue and dismisses the Estate's § 1983 claim against her.

## C. Supplemental Jurisdiction

The district courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of state law or when the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367.

In this case, it appears that both of these contingencies have been satisfied. Jurisdiction was based on federal question, Dkt. 1 ¶ 2, and it appears that all of the federal claims have been dismissed. Moreover, the Estate's state law claims involve novel interpretations of Washington's Abuse of Vulnerable Adults Act and the implementing regulations. *See* Dkt. 106 (the Estate's motion for partial summary judgment on these claims). Therefore, the Court is considering declining to exercise supplemental

jurisdiction over the remaining claims and dismiss them without prejudice.  The Court, however, will allow the parties an opportunity to address this issue and requests responses.

### IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' joint motion for summary judgment (Dkt. 93) is **GRANTED in part** on the Estate's § 1983 claims.  The Court reserves ruling on the remainder of the motion and requests responses no later than June 15, 2018.

The Court also extends the dispositive motion deadline to June 28, 2018 in an effort to save the parties from expending resources on the remaining state law claims.

Dated this 11th day of June, 2018.

BENJAMIN H. SETTLE
United States District Judge